1:12 MJ 9125

## **A F F I D A V I T**

I, Todd C. Platt, Special Agent of the Federal Bureau of Investigation (FBI), hereinafter referred to as the Affiant, being duly sworn, state that:

1. Your Affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7), of Title 18, United States Code, as a Special Agent of the FBI. As such, your Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18, United states Code, Section 2516.

2. Your Affiant has been employed by the FBI for approximately seventeen (17) years. Your Affiant has been assigned to the Cleveland Division of the FBI for the past seventeen (17) years. Your Affiant is currently assigned to the Northern Ohio Law Enforcement Task Force (NOLETF). During the Affiant's assignment with the NOLETF, your Affiant has been assigned to investigations targeting organizations involved in drug trafficking offenses in the Northern District of Ohio. While being trained as a Special Agent of the FBI, your Affiant has received basic drug training at the FBI Academy located in Quantico, Virginia. Your Affiant has written and executed search warrants which have resulted in the seizure of illegal drugs and evidence of drug violations. Your Affiant has written and

executed seizure warrants which have resulted in the seizure of assets acquired with drug proceeds. Your Affiant has previously been the Affiant on forty-three (43) Title III wiretap applications. These wiretap applications led to the federal arrest and conviction of hundreds of individuals. Your Affiant has supervised the activities of informants who have provided information and assistance in the federal prosecution of drug offenders. Based upon the above experience, your Affiant is familiar with the *modus operandi* of persons involved in illicit distribution of controlled substances as well as the terminology used by persons involved in the illicit distribution of controlled substances. Your Affiant is aware that persons involved in the illicit distribution of controlled substances routinely attempt to conceal their identities as well as the location at which drug transactions take place. These people are also known to have vehicles, properties, utilities and other items purchased in the names of others in order to conceal the association of drug activities with financial transactions. Your Affiant knows that individuals engaged in organized drug distribution and sales maintain extensive contact with persons from whom they receive drugs and with whom they distribute these drugs.

3. Your Affiant knows that professional drug operations depend upon maintaining their extensive contacts

throughout the country and have elaborate transportation techniques utilized to facilitate the transportation of large quantities of drugs from distribution cities to consumption cities. These techniques include several different modes of commercial transportation (Greyhound bus, Amtrack train, Airlines, Freight). In your Affiant's investigative experience, drug traffickers frequently utilize personal and rented automobiles, some of which contain hidden compartments, to transport contraband and money between drug suppliers and drug customers.

### BASIS OF INFORMATION

4. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by FBI Agents, Northern Ohio Law Enforcement Task Force (hereinafter "NOLETF" a Cleveland, Ohio, multi-agency Federal, state, and local drug task force) officers or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth Affiant's observations but rather has been provided directly or indirectly

3

by FBI Agents, NOLETF Officers or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS) from the State of Ohio or the National Crime Information Center (NCIC) computers by members herein described.

5. Since the Affidavit is being submitted for the limited purpose of securing an arrest warrant, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to establish the foundation for the issuance of an arrest warrant.

### CONFIDENTIAL SOURCE

6. In this investigation an FBI Source (hereinafter referred to as Source) provided information regarding the drug trafficking activities of MICHAEL ALEXANDER Jr. Information developed from the Source has been utilized in this Affidavit. The Source has provided reliable information to the FBI since March, 2012. Information provided by the Source has been corroborated through physical surveillance, database checks, and other investigative techniques. Therefore, your Affiant believes the information provided by the Source to be truthful and reliable.

## FACTS and CURCUMSTANCES

7. In May, 2012, FBI received information from an FBI Source that MICHAEL LNU, who Source had never met and believed to be an individual named Michael Calhoun, was involved in the distribution of large amounts of heroin in the greater Cleveland, Ohio, area. An associate of MICHAEL LNU provided Source with MICHAEL LNU's cellular telephone number, 216-299-1106 to contact MICHAEL LNU to purchase heroin. (The investigation later confirmed that MICHAEL LNU was MICHAEL ALEXANDER Jr. and hereinafter will be referred to as MICHAEL ALEXANDER).

8. During the week of July 16, 2012, Source placed and outgoing telephone call to telephone number 216-299-1106, wherein Source had a conversation with ALEXANDER. During the conversation Source ordered an amount of heroin and set up a time and place to meet ALEXANDER to conduct the drug transaction. Surveillance units observed ALEXANDER arrive at the prearranged meeting location driving a blue Chevy Cobalt bearing Ohio license FAY 8846, which is registered to Shardae Seals, 4820 Geraldine Road, Richmond Heights, Ohio. During the meeting Source paid ALEXANDER for an amount of heroin. After the drug transaction surveillance units attempted to follow ALEXANDER but terminated the surveillance due to ALEXANDER's driving techniques which were indicative of attempting to identify law enforcement presence. Approximately 30 minutes later, surveillance units observed the

blue Cobalt parked in the lot for the apartment building located at 27721 Tungsten Road, Euclid, Ohio. A sample of the heroin was field tested using NIK-KIT and tested positive for heroin. Your Affiant reviewed the controlled purchase video and confirmed that the individual that sold the Source the heroin was MICHAEL ALEXANDER Jr. ALEXANDER has several noticeable tattoos on his arms and neck that are clearly visible on the video and ALEXANDER's Ohio BMV photo.

9. Database searches revealed Shardae Seals' current residence to be 27721 Tungsten Road, Apartment #84, Euclid, Ohio. A review of the Oaks of Euclid Apartment complex lease listing confirmed that Shardae Seals was currently leasing the apartment located at 27721 Tungsten Road, Apartment 84, Euclid, Ohio. Further database searches revealed that MICHAEL ALEXANDER also listed 27721 Tungsten Road, Apartment #84, Euclid, Ohio, as his residence.

10. Criminal database searches confirmed that MICHAEL ALEXANDER Jr. was currently on federal supervised release stemming from his federal arrest for drug trafficking in 2010. Your Affiant spoke to ALEXANDER's Federal Probation Officer (FPO), Art Bowker, who confirmed that ALEXANDER was released from the Bureau of Prisons on or about March 16, 2012 and was currently on federal supervised release. FPO Bowker confirmed that ALEXANDER listed his address from March, 2012 to the end of

May, 2012, as 27721 Tungsten Road, Apt #84, Euclid, Ohio, and was living there with his girlfriend Shardae Seals. FPO Bowker further advised that after May 31, 2012, ALEXANDER was evicted from the 27721 Tungsten Road apartment because ALEXANDER was on record as being a sexual predator. FPO Bowker advised, after May 31, 2012, ALEXANDER listed and stated he was living at his uncle's residence located at 17579 Wildwood Lane, Cleveland, Ohio.

11. On August 1, 2012, surveillance was initiated at 27721 Tungsten Road, apartment #84, Euclid, Ohio. Surveillance units did not observe any vehicles known to be driven by ALEXANDER. Moments later, Source placed an outgoing telephone call to telephone number 216-299-1106, wherein Source had a conversation with ALEXANDER. During the conversation Source ordered an amount of heroin and set up a time and place to meet ALEXANDER to conduct the drug transaction. Minutes later surveillance units observed ALEXANDER arrive at the 27721 Tungsten Road apartment complex driving the previously mentioned blue Chevy Cobalt. ALEXANDER exited the vehicle and entered apartment #84. After approximately ten minutes, surveillance units observed ALEXANDER exit apartment #84 holding something in his hand which he put in the front pocket of his pants. ALEXANDER entered the blue Chevy Cobalt and departed. Surveillance units followed ALEXANDER until he arrived at the

prearranged meeting location with the Source. Surveillance units observed ALEXANDER meet with the Source. During the meeting Source paid ALEXANDER for an amount of suspected heroin. After the controlled purchase, ALEXANDER re-entered the blue Chevy Cobalt and drove off. Surveillance units maintained constant surveillance on ALEXANDER who returned to the above described apartment premises and entered apartment #84. Your Affiant met with the Source and took possession of the suspected heroin. Upon examination, the suspected heroin for which the Source paid ALEXANDER and presented as being heroin appeared to be counterfeit. A sample of the heroin was field tested using NIK-KIT and tested negative for heroin.

12. Approximately 15 minutes later surveillance units observed a gold colored vehicle, bearing Ohio license plate ESC 6680 arrive and park near apartment #84. Moments later, surveillance units observed ALEXANDER exit the front door of apartment #84, walk to the gold colored vehicle and conduct a hand to hand transaction with the female driver, later identified as Lori Lanning. Immediately after the transaction with Lanning, ALEXANDER was arrested without incident. Found in ALEXANDER's front pocket were $140 in cash and a cellular telephone, 216-299-1106.

13. Lanning was interviewed and stated that she met ALEXANDER approximately one month ago through a friend who was

also purchasing heroin from ALEXANDER. Lanning stated she has been purchasing personal use amounts of heroin, between $20 to $140 per purchase, from ALEXANDER for the past month. Lanning stated she usually met ALEXANDER four (4) times a week to purchase heroin. Lanning stated she had just purchased $140 worth of heroin from ALEXANDER and presented the officers with two plastic bags of heroin which were seized. A sample of the heroin was field tested using NIK-KIT and tested positive for heroin.

14. Immediately following ALEXANDER's arrest and pursuant to a search warrant issued for 27721 Tungsten Road, apartment #84, Euclid, Ohio, agents and officer entered and secured the residence. Some of the evidentiary items seized during the search were approximately 44 grams of heroin, a heroin press, a digital scale, a heroin grinder, heroin cut, packaging material, and a Jennings model T380, .380 caliber automatic hand gun. Your Affiant confirmed that the handgun was reported stolen by the Eastlake Police Department. A sample of the heroin seized during the search was field tested using NIK-KIT and tested positive for heroin. After being advised of his Miranda rights, ALEXANDER admitted the heroin and firearm seized during the search warrant were his.

## SUMMARY AND CONCLUSION

15. Based upon your Affiant's training, experience, and the facts set forth in this Affidavit, your Affiant believes that there is probable cause to believe that MICHAEL ALEXANDER Jr., did knowingly and intentionally distribute and possess with intent to distribute heroin, a Schedule I controlled substance, in violation of Title 21, U.S.C., Section 841(a)(1) and (b)(1)(c).

_____
Todd C. Platt
Special Agent
Federal Bureau of Investigation

This and the preceding 9 pages were sworn to and subscribed before me this <u>2nd</u> day of August, 2012.

_____
WILLIAM H. BAUGHMAN, JR.
United States District Court Magistrate/Judge